MARY W. BROWN, DEFENDANT IN ERROR, v. NATHANIEL K. THOMPSON ET AL., PLAINTIFFS IN ERROR.

Argued December 6, 1907—Decided June 15, 1908.

Where an abutting owner was arrested for resisting the cutting of her sidewalk, and sued a street commissioner for causing her arrest, it is competent, for the purpose of mitigating punitive damages, to show that the commissioner thought that the cutting of the pavement was necessary to the proper execution of a street paving contract.

On error to the Supreme Court.

For the plaintiffs in error, *James C. Connolly.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

REED, J.   In January, 1904, the common council of the city of Elizabeth passed an ordinance ordaining that Front street should be paved from Broadway to Bond street, and that the work should be done under the supervision of the street commissioner, according to the provisions of the city charter and ordinances.

The ordinance was duly published and notices of sealed proposals to do the work duly given, and the contract was awarded to one McCloud, who entered into a contract, on June 15th, 1904, to execute the work.

On July 30th, 1904, in the course of executing the work, the foreman of the contractor reached a point where the property of the plaintiff fronted on Front street a distance of one hundred and seventy-five feet.   The city engineer had marked with chalk lines the limits of the improvements, and those chalk marks included a few inches of the then existing sidewalk in front of the plaintiff's property.   When the foreman and his workmen proceeded to cut away the portion of the sidewalk outside of the chalk line, the plaintiff resisted.   She seized the implements of the workmen and placed her person upon the pavement at the point of the cutting, so that the work could not be prosecuted without the physical removal of the plaintiff.   A communication was sent to police headquarters, but before the police arrived, Mr. Thompson, the street commissioner, appeared.   He held a conversation with Mrs. Brown, the plaintiff, and tried to persuade her to abandon her physical resistance to the progress of the work, and explained to her that her sidewalk was too far out into the street.   The plaintiff refused to desist, and then Thompson telephoned to the chief of police, or to Captain O'Leary, telling him that the workmen on the street would have to be protected.   Subsequently Captain O'Leary, of the police force,

arrived and held a conversation with the plaintiff, advising her to seek redress by suing the city, but the plaintiff still persisted in obstructing the work. The occurrence in the street naturally attracted a small crowd. The plaintiff was told that she would be arrested, and was requested to go voluntarily with the police officer. This she refused to do, and she was placed in the patrol wagon and taken to the police headquarters, where she was confined for four or five hours, and then discharged.

The plaintiff thereafter brought this action against five defendants, and the trial resulted in a verdict against Thompson, the street commissioner, and Captain O'Leary, captain of the police force.

Thompson filed a plea of the general issue and O'Leary an additional plea of justification. The latter plea set up that the plaintiff was disorderly, and was committing a breach of the peace in and upon a public street, and interfering with and obstructing the workmen and contractor employed therein, and that the defendant, being a peace officer, to preserve the peace, took her into custody and carried her to a police justice, and there preferred a complaint against her of disorderly conduct.

Upon the trial of the cause the jury was left free to find, not only compensatory, but also punitive, damages, and the jury found against the commissioner and Captain O'Leary damages to the amount of $2,500.

In the course of the trial the defendants offered in evidence the ordinance directing the paving of Front street; the statutory notice of intention, and the contract entered into between the city and McCloud to pave Front street. They offered in evidence the fact that the city engineer had drawn chalk lines upon the pavement of the plaintiff. The engineer was then asked how far in from the curb line he put the chalk marks, and he proceeded to explain how he had placed the marks. He was then asked this question: "Could the contract awarded to Brennan and McCloud have been performed in accordance with its terms if the workmen were not allowed

to cut away a portion of the sidewalk, according to the lines laid down by you for the contractor?" This question was overruled, and we think erroneously. It is true the question was not framed so as to elucidate whether the line marked was the true line of the street, or whether it established the dividing line between the sidewalk and the street, or whether there existed the right or custom in paving the street to alter the curb lines to conform to the requirements of the paving work. Nevertheless, we think the question relevant upon the point whether the defendants acted in good faith or maliciously, for if it had appeared to Thompson, the commissioner under whose supervision the work was done, that the intrusion upon the sidewalk was unnecessary for the execution of the work in hand, it might be inferred that his calling in the police to detain Mrs. Brown while her sidewalk was unnecessarily mutilated was a malicious act, while on the other hand, if it appeared to him that such invasion of the sidewalk was necessary to the execution of the contract work, no such inference would arise.

For this reason the judgment should be reversed.

Upon the other questions in the case, there being no exceptions to the charge other than to the refusal to charge these specified requests as framed, no opinion is expressed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BERGEN, BOGERT, VROOM, GREEN, GRAY, DILL, J.J.  12.